[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 06-13258

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 28, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00204 CR-C-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BILLY R. MERCER, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(August 28, 2008)**

Before EDMONDSON, Chief Judge, WILSON and MARTINEZ,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

This case arises from the warrantless search of a hotel room. Based on evidence seized during the search, Billy R. Mercer, Jr. (Defendant) was charged with one count of possession with intent to distribute methamphetamine and one count of possession of a firearm in furtherance of a drug-trafficking crime. Defendant moved the district court to suppress certain items seized from the hotel room and certain statements he made to law enforcement officers after his arrest. The district court denied Defendant's motion, and a jury convicted Defendant on both counts. On appeal, Defendant argues that the district court erred in denying his motion to suppress and that the evidence presented was insufficient to support his convictions. Seeing no reversible error, we affirm.

## I. Background

The Alabama Bureau of Investigation (ABI) believed that Defendant was involved in the drug trade. ABI Agent Harmon asked several motels in the Prattville, Alabama area to contact him if Defendant checked into their establishment.

On 10 October 2004, a night clerk at the Hampton Inn in Prattville called the ABI to report that Defendant had rented a room for the night. The clerk was

unable to reach the ABI and was transferred to the police department in Millbrook, Alabama. The Millbrook police department was unaware of the ABI's interest in Defendant, but Millbrook officers discovered an outstanding failure-to-appear warrant for Defendant. The Millbrook police department contacted the Prattville police department and requested that Prattville officers arrest Defendant on the Millbrook warrant.

Around 11:00 p.m., Prattville officers arrived at the motel and knocked on Defendant's door. Defendant answered the door after three or four minutes. The officers asked Defendant to step outside and asked if anyone else was in the room. Defendant replied that his sister-in-law, Anita Mercer, was inside. Because she was not a registered guest, the motel staff said that she could not stay; so, she packed a duffel bag and left. The officers did not search her bag.

When the Millbrook officers arrived, they arrested Defendant on the failure-to-appear warrant and transported him to jail. As the officers escorted Defendant off the property, Defendant instructed his sister-in-law to "[g]o ahead and sell everything in my truck." Defendant told the officers he would have no problem getting the money to pay his fine.

After Defendant's arrest, Prattville Officer Headley told the motel staff that "more than likely [Defendant] wasn't going to be back to the hotel" because he

3

was not going to be able to pay his fine and to get out of jail that night.[1] The arrest occurred around midnight on a Sunday night, and Officer Headley believed Defendant would not be able to pay his fine until after 8:00 a.m. the next morning, "if not later."[2]

Before the Prattville officers left the motel, the motel manager asked Officer Headley to walk through Defendant's room with her to make sure there were no personal belongings lying out. During the walk-through, the manager found a necklace and removed it from the room. Officer Headley also observed a plastic baggy lying on the dresser and a powdery substance on the floor. Officer Headley determined that this evidence was not sufficient to pursue further.

Later that night, the motel security guard and the lobby hostess returned to Defendant's room "to make sure it was clear of any type of–anything that would cause any problems." While in the room, the guard pulled a tissue out of the dispenser and two bags of a "crystal substance" fell out. The motel staff members took the plastic bags to the lobby and called the police.

Around 4:00 a.m., the Prattville officers returned to the motel and determined that the substance in the plastic bags was likely crystal

---

[1] Defendant had rented the room for only the one night.

[2] Officer Headley had previously worked for the Millbrook police department.

methamphetamine (meth).[3] The motel manager asked the officers to search the room thoroughly because she feared there might be more meth, guns, or dangerous chemicals in the room. Officer Headley confirmed that the manager was giving the officers permission to search the room; the manager replied, "Yes, I want you to check and make sure there is nothing else in that room." The officers proceeded to search the room and discovered in a pouch under the bed mattress a loaded .380 semi-automatic handgun, jeweler's baggies, and a piece of paper they determined was likely a drug ledger.[4]

On 12 October 2004, ABI Agent Herman interviewed Defendant in jail. Agent Herman advised Defendant of his rights, and Defendant acknowledged that he understood them. In response to questioning, Defendant made several incriminating statements concerning the gun and drugs found in his motel room. Agent Herman did not make threats or promises to obtain the statements, but acknowledged Defendant might have been providing information in an attempt to persuade the agent to help him get out of jail.

---

[3]The bags were later determined to contain 15.6 grams of meth.

[4]Later that morning (11 October), motel staff allowed a Prattville narcotics officer and two ABI agents into Defendant's room to photograph the location. After leaving the room, the officers set up surveillance on Anita Mercer's car, which remained on the property. When Anita arrived, she consented to a search of the vehicle; and officers found a quantity of meth. During an exchange with the officer and agents, Anita made several statements incriminating Defendant. Defendant did not move to suppress this evidence.

Defendant was charged with one count of possession with intent to distribute meth, 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1). Defendant pleaded not guilty and moved to suppress, among other things, the pistol, plastic bags, drug ledger, and his post-arrest statements to Agent Herman. The magistrate judge recommended that Defendant's motion to suppress be denied, determining that the search uncovering the pistol, plastic bags, and drug ledger was constitutional "on at least two grounds:" (1) the officer had an objectively reasonable good-faith belief that he obtained valid consent to search the room; and (2) exigent circumstances. For Defendant's post-arrest statements to Agent Herman, the magistrate judge concluded that Defendant made a voluntary, knowing, and intelligent waiver of his rights. The district court adopted the magistrate judge's recommendations.

A jury convicted Defendant on all counts. On appeal, Defendant argues that the district court erred in denying his motion to suppress and that the government presented insufficient evidence to support his convictions.

II. Standard of Review

6

In reviewing a district court's denial of a motion to suppress, we review the findings of fact for clear error and the application of law to those facts *de novo*. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007). When considering a ruling on a motion to suppress, we construe all facts in the light most favorable to the party prevailing in the district court–here, the government. Id. at 1235-36 (citing United States v. Hromada, 49 F.3d 685, 688 (11th Cir. 1995)).

We review challenges to the sufficiency of the evidence *de novo*. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). We must determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999). In doing so, we view the evidence in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor. United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005).

## III. Discussion

A.    Motion to Suppress

1.    Warrantless Search

The Fourth Amendment protects a person's reasonable expectation of privacy in his motel room.  Stoner v. California, 84 S. Ct. 889, 893 (1964).  And the general rule is that a hotel employee does not have authority to consent to a warrantless search of a room rented to a guest.  Id.  Nonetheless, a warrantless entry is valid when it is based upon the consent of a third party whom the police, at the time of entry, reasonably believed possessed authority over the premises. Illinois v. Rodriguez, 110 S. Ct. 2793, 2800 (1990).  The "determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?"  Id. at 2801 (internal quotation marks omitted) (alteration in original).

Defendant argues no reasonable officer could have believed that control of the room reverted from Defendant, a registered guest, back to motel management at 4:00 a.m.: a time well before the motel's typical checkout time of 12:00 p.m. We disagree.

When the motel manager consented to the search, the Prattville officer knew these things: (1) the Millbrook police department had arrested Defendant and

transported him to jail; (2) Defendant had rented the room for only one night; (3)

Defendant would not be able to pay his fine or post bond until sometime the next

day at the earliest;[5] (4) the motel staff had asked Anita Mercer–Defendant's

visitor–to vacate the room; (5) the motel manager had conducted a sweep of the

room to check for, and to remove, personal belongings;[6] and (6) the motel staff

had entered the room a second time to make sure it was clear of anything that

might cause a problem for motel guests or staff.[7]  Under those circumstances, it

was reasonable for the officer to believe that the motel had terminated Defendant's

rental agreement and that control of the room had, in fact, reverted back to motel

management, who therefore had authority to consent to the search.  For

background, see Ala. Code § 34-15-17 (1975) (hotel "shall have the right to

remove, cause to be removed or eject . . . any guest of said hotel . . . who, while in

said hotel or on the hotel premises, . . . shall indulge in any language or conduct or

---

[5]In his appellate brief, Defendant asserts that he "specifically told the officer that he was coming back" to the motel room; this assertion is not supported by the record.  Officer Headley's testimony reflects his understanding that Defendant thought he was going to get out on bond "pretty soon," not that Defendant intended to return to the motel room.  And, in fact, Defendant never did return to the hotel room.

[6]The officer testified at trial that the only personal item found by the manager was a necklace, which the manager removed.

[7]The officer testified at trial that he understood one of the reasons for the motel staff's second search of Defendant's room was "to see if they could go ahead and get it ready for the next client to rent out."

9

otherwise conducts himself in such fashion as to disturb the peace and comfort of other guests, proprietor or employees of such hotel"); United States v. Rambo, 789 F.2d 1289, 1295-96 (8th Cir. 1986) (concluding that rental period was terminated and control over hotel room reverted back to management where hotel guest was justifiably ejected under state law); United States v. Haddad, 558 F.2d 968, 975 (9th Cir. 1977) ("[A] justified ejection is no different than a termination of the rental period, when the guest has completely lost the right to use the room and any privacy associated with it.") (internal quotation marks omitted); United States v. Inmon, No. 07-3103-01-02-03-CR-S-GAF, 2008 WL 2018286, at *9 (W.D. Mo. May 7, 2008) ("[D]efendant's expectation of privacy in [his hotel room] was lost at the point he was arrested, which caused his rental period to be forfeited and control of [the room] to revert back to the hotel.").

Because we have determined that the warrantless search of Defendant's motel room is justified based on the officer's objectively reasonable, good-faith belief that the motel manager had authority to consent to the search, we say nothing on the other arguments raised by the government for the search.

2. Post-Arrest Statements

Defendant contends that his post-arrest statements to the ABI agent were taken in violation of Miranda v. Arizona, 86 S. Ct. 1602 (1966). Based on the agent's trial testimony that "[Defendant] wanted to see me and I went down to talk to him about what he possibly could do to help himself out in his situation," Defendant asserts that there was "a reasonable probability that appellant received an implied promise of a cooperation agreement[.]"

A waiver of one's privilege against self-incrimination and right to counsel must be voluntary, knowing, and intelligent.[8] United States v. Beale, 921 F.2d 1412, 1434 (11th Cir. 1991). A statement is not voluntary if it is "obtained by any direct or implied promises, however slight . . .." Bell v. Alabama, 367 F.2d 243, 247 (5th Cir. 1966) (quoting Malloy v. Hogan, 84 S. Ct. 1489, 1493 (1964)).

The district court properly concluded that Defendant's statements to the ABI agent were voluntary. Construing the facts in the light most favorable to the government, nothing in the record evidences that anyone made promises to Defendant, direct or implied, in exchange for his statements.[9] Even if the ABI agent approached Defendant about the possibility of a cooperation agreement, that alone does not make Defendant's statements involuntary. United States v.

[8]Defendant contends only that his statements were involuntary.

[9]The record reflects that the ABI agent informed Defendant of his Miranda rights before the interview.

11

Davidson, 768 F.2d 1266, 1271 (11th Cir. 1985) ("A statement made by a law enforcement agent to an accused that the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary.").

B.      Sufficiency of the Evidence

To convict Defendant of possession with intent to distribute methamphetamine, the government had to establish three elements: (1) knowledge; (2) possession; and (3) intent to distribute.  21 U.S.C. § 841(a)(1); United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir. 1999).  Defendant argues the jury's finding of intent was based on speculation, not reasonable inferences.  See United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir. 1994) ("[R]easonable inferences, and not mere speculation, must support the jury's verdict.").  "Inferred factual conclusions based on circumstantial evidence are permitted only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts."  United States v. Villegas, 911 F.2d 623, 628 (11th Cir. 1990) (internal quotation marks omitted).

12

We conclude the government presented ample evidence from which the jury could infer intent to distribute, including a large number of plastic jeweler's bags,[10] the "drug ledger,"[11] the amount of meth, the lack of paraphernalia used to consume the drug, and testimony about Defendant's purchase of an ounce of meth in Birmingham on the day of his arrest. This evidence was enough.

Defendant argues the evidence of intent was insufficient because officers never found money or digital scales in the motel room. In light of the other evidence of intent introduced at trial, the absence of these things is not outcome determinative. Moreover, the Prattville officer testified at trial that when he knocked on the door, it took several minutes for someone to answer. And, Anita Mercer left the motel with a duffel bag that was never searched. Although the jury need not to have done so to convict, a reasonable jury could infer that Defendant and his sister-in-law were slow in answering the door because they were busy hiding further evidence of the drug operation, possibly in the duffel bag.

---

[10]Officer Headley testified that, based on his experience, a large number of smaller baggies "usually means that somebody is fixing to distribute [drugs] into smaller baggies to make purchase of it, to make sales." Agent Herman testified that meth is "typically sold in jeweler's bags[.]"

[11]Agent Herman testified that the document found under the mattress–which included first names and even numbers–appeared to be a drug ledger. Agent Herman also testified that a drug ledger is something he would expect to find in a place where a person is involved in the distribution of narcotics.

Defendant also argues there was insufficient evidence presented for a reasonable jury to find that Defendant possessed a firearm "in furtherance of" a drug crime. This Court has determined that to prove possession "in furtherance of" a drug crime under 18 U.S.C. § 924(c)(1)(A), the government must establish that "the firearm helped, furthered, promoted, or advanced the drug trafficking." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002). A conviction is properly supported by "a showing of some nexus between the firearm and the drug selling operation." Id. at 1253 (internal quotation marks omitted). The nexus may be established by the kind of drug activity that is being conducted, accessibility of the firearm, the type of firearm, whether the firearm is stolen, the status of the possession (legitimate or illegal), whether the firearm is loaded, proximity of the firearm to the drugs or drug profits, and the time and circumstances under which the firearm is found. Id.

Here, officers found a loaded .380 caliber semi-automatic handgun hidden in a pouch under the mattress in Defendant's motel room. In addition to the firearm, the pouch also contained jeweler's bags and a "drug ledger." Because the firearm was readily available in the same room where a jury could infer drugs were being packaged for sale and available in the immediate vicinity of items commonly used in a drug operation, we conclude that the evidence presented was

14

sufficient for a reasonable jury to find that Defendant possessed the firearm "in furtherance of" a drug trafficking crime.

## IV. Conclusion

For the foregoing reasons, we affirm Defendant's convictions.

AFFIRM.