[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 19, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-12813
Non-Argument Calendar

_____

D. C. Docket No. 08-21166-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL GLOVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 19, 2009)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Samuel Glover appeals his conviction for possession with intent to distribute

500 grams or more of cocaine, in violation of 21 U.S.C. § 841. On appeal, he

contends that the district court improperly denied his motion to suppress the evidence seized on the ground that customs officials lacked reasonable suspicion that he was an internal carrier. After a thorough review of the record, we affirm.

I. Background[1]

On December 12, 2008, U.S. Customs and Border Patrol officer Alfred Marino received information from a passenger analytical unit that a person would be arriving at Miami International Airport from Trinidad around 7 p.m. The individual, identified as Glover, was flying in and out of Miami but lived in Jacksonville, had made the same trip several times, and recently had obtained a new passport. Although the information identified Glover specifically, Marino and other customs officers questioned all the passengers on the flight consistent with policy when dealing with flights arriving from high-drug-trafficking locations. As the officers were questioning the passengers, there was a TV film crew recording the officers and passengers. While waiting in line to be questioned, Glover was sweating, standing rigidly, and his carotid artery was pulsating. Marino and Officer Vargas removed Glover from the line and escorted him to baggage, advising him that they wished to search his luggage for contraband. Glover had

---

[1] These facts are taken from the testimony at the suppression hearing, viewed in the light most favorable to the government. *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).

difficulty identifying his bag and checked several other bags of different colors before locating his bag, which was black. Once Glover retrieved the bag, Marino and Vargas took Glover to an enforcement area, where a pat-down search of Glover and a search of the bags uncovered nothing.

Glover seemed nervous and continued to sweat even though the room was cool. During the interview, Marino and Vargas offered Glover food and, although Glover stated he was hungry, he ate only a few bites of the donut he was given before throwing it away. He also declined food from Burger King.

As Glover described his travel arrangements, he was unable to remember the last names of people involved, even though he claimed to have known these people for years. Vargas's attempts to contact Glover's friends did not resolve the inconsistencies.

Glover's conduct made Marino suspicious. Marino and Vargas asked Glover if he would consent to an x-ray. After Glover refused, Marino and Vargas advised Glover that they could take him to the hospital and wait until he had three bowel movements to ensure he was not carrying contraband. Around midnight, after Glover refused consent, the officers transferred him to the hospital.

Officer Wilfredo Gonzalez was assigned to monitor Glover at the hospital and retrieve any contraband. The hospital refused to admit Glover without an x-

ray, per its policy. Because Glover could not be admitted, he was handcuffed to a wheelchair in the hospital's hallway. He was intermittently allowed to walk around and was given water upon request.

Around mid-morning, Officer Stevenson spoke with Glover for about an hour. Stevenson then advised Gonzalez that Glover was ready to consent to the x-ray. Glover signed the consent form at about 1:57 p.m. on December 13. The x-ray revealed that Glover was carrying numerous pellets, which were later determined to be cocaine.

Glover was indicted for importation of 500 grams or more of cocaine, in violation of 21 U.S.C. § 952 (Count 1), and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841 (Count 2). He moved to suppress the evidence, alleging that customs officials lacked any reasonable suspicion to detain him and force him to consent to an x-ray.

Following the testimony at the suppression hearing,[2] the magistrate judge

_____

[2] Glover also testified at the hearing. In his testimony, Glover explained that he was nervous and was sweating because the TV crew was filming and their lights were hot. He stated that the film crew handed him a blank form to sign and told him it was for consent to be searched. Glover accompanied the officers to find his bag. He had to check several other dark colored bags to find his bag, which was blue, and it took about thirty minutes. After Glover retrieved his bag, the officers took him to another room, searched him and his bag, and questioned him. Although Glover asked for a lawyer, the officers denied his request. He was kept in the interview room from 7 p.m. until 10:30 p.m., when he was taken to the hospital after refusing to consent to an x-ray. At the hospital, officers and nurses would speak to him and tell him that he was not going to get any food and that he would begin to feel sick and could die. The following day, Officer Stevenson spoke with him for about an hour, telling him that an x-ray would speed things along and that he could not leave

4

recommended denying the motion to suppress because, although Glover's consent

to the x-ray was not voluntary, the officers had reasonable suspicion to detain him.

The district court adopted the recommendation, over Glover's objections, and

denied the motion to suppress. Thereafter, Glover entered a conditional plea,

reserving the right to appeal the denial of his motion to suppress and was sentenced

to 33 months' imprisonment.[3] This appeal followed.

## II. Standard of Review

In reviewing a district court's denial of a motion to suppress, we review the

district court's factual findings for clear error and its application of the law to those

facts *de novo*. *United States v. Mercer*, 541 F.3d 1070, 1073-74 (11th Cir. 2008).

We construe all facts in the light most favorable to the government as the

prevailing party. *Id.* at 1074.

## III. Discussion

In general, there is no constitutional violation when customs officials first

encounter an individual seeking entry into the United States, stop the person, and

conduct a preliminary border search. *Denson v. United States*, 574 F.3d 1318,

---

if he did not consent. Stevenson warned Glover that he had seen other internal body carriers die. Glover was told that he would not be allowed to enter the United States until customs officials confirmed that he was not carrying anything illegal.

[3] Although there was a mandatory minimum sentence of five years, Glover qualified for a reduction under the safety-valve provision. The court also imposed a downward variance to arrive at the term of imprisonment.

1340 (11th Cir. 2009) (citing *United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977)). The officer may conduct routine questioning, check luggage, and conduct a pat-down search without any level of suspicion. *Id.*; *see also United States v. Vega-Barvo*, 729 F.2d 1341, 1344-45 (11th Cir. 1984).

"If, after conducting initial questioning and a preliminary search . . . , the officer has reasonable suspicion that the traveler is smuggling drugs [internally], the Fourth Amendment permits the Customs officer to detain the individual and conduct a more intrusive search." *United States v. Montoya de Hernández*, 473 U.S. 531, 541-42, 105 S.Ct. 3304, 3310-11, 87 L.Ed.2d 381 (1985) (allowing detention of traveler based on reasonable suspicion of smuggling contraband in her alimentary canal); *United States v. Pino*, 729 F.2d 1357, 1359 (11th Cir. 1984) (finding the use of x-ray to search traveler constitutional where reasonable suspicion exists that the person is concealing drugs internally). Similarly, once an officer gains reasonable suspicion that a traveler is smuggling drugs internally, it is constitutionally reasonable for the officer to detain the traveler for a period of time necessary to either verify or dispel his suspicion. *Montoya de Hernández*, 473 U.S. at 544, 105 S.Ct. at 3312; *Denson,* 574 F.3d at 1341; *United States v. Rodriguez*, 74 F.3d 1164, 1164-65 (11th Cir. 1996).

Glover argues that there was no reasonable suspicion to justify his detention

6

because the airport search and interrogation dispelled any suspicion.[4]  In support of his argument, he cites *Brent v. Ashley*, 247 F.3d 1294 (11th Cir. 2001).

Upon review, we conclude that the customs officials had reasonable suspicion based on the facts presented.  Glover's nervousness, his recently renewed passport, his other trips to Trinidad, which was known to be a high drug trafficking location, and the fact that he traveled in and out of Miami but lived in Jacksonville all support reasonable suspicion.  Additionally, Glover had trouble identifying his bag and found it necessary to check several different bags of varying colors before finding the one with his name.  When Glover was questioned, he could not tell authorities the last name of the friend who had driven him to Miami or the friend who had purchased the ticket in cash, even though he claimed to have known these men for years.  When the officers attempted to contact these friends, they were unable to confirm Glover's story.  *See Vega-Barvo*, 729 F.2d at 1343 (considering

---

[4] Glover's argument focuses on the time he was detained at the hospital until he submitted to the x-ray.  He does not appear to contest the time he was initially questioned, asserting instead that the interview and search at the airport dispelled reasonable suspicion.  Glover also argues, for the first time on appeal, that the delay in presenting him to a magistrate judge was unreasonable and requires that any statements he made be suppressed.  Arguments raised for the first time on appeal are subject to plain error review.  *United States v. Duncan*, 400 F.3d 1297, 1301 (11th Cir. 2005).  Under Fed. R. Crim. P. 5(a), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ."  Fed. R. Crim. P. 5(a).  This court considers the  reasons for the delay to determine whether the rule has been violated.  *United States v. Purvis*, 768 F.2d 1237, 1239 (11th Cir. 1985).  In this case, we conclude there was no violation under the rule, as the government could not allow Glover to leave the hospital while carrying drugs internally.

7

as part of reasonable suspicion the inability to confirm the defendant's story); *see also Denson*, 574 F.3d at 1342 (citing *United States v. Gonzalez-Rincon*, 36 F.3d 859 (9th Cir. 1994) for the proposition that there was reasonable suspicion where the passenger arrived from a source country, paid for her ticket in cash, carried only one piece of luggage although she planned to stay two weeks, appeared nervous, and used a passport reflecting several entries into the United States). The officers also found it suspicious that Glover claimed to be hungry, yet ate only a few bites of a donut and declined any other food.

Furthermore, the fact that the luggage and pat-down search did not reveal drugs did not dispel the reasonable suspicion; rather, it added to the suspicion that Glover was an internal smuggler. *Denson*, 574 F.3d at 1343. These facts, taken together, are sufficient to establish reasonable suspicion.

We are not persuaded that *Brent* requires a different result. In *Brent*, the court concluded the government lacked reasonable suspicion based on the defendant's arrival from a source country and nervousness. 247 F.3d at 1301-02. Here, as noted, there were more facts leading to reasonable suspicion.

Therefore, because the totality of the circumstances gave the customs officials reasonable suspicion, Glover's detention was proper. Accordingly, we AFFIRM Glover's conviction.

**AFFIRMED.**