[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15031
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00035-WCO-JCF-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL AGUILAR-GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 10, 2014)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Daniel Aguilar-Gonzalez appeals his convictions for conspiracy to possess with intent to distribute a controlled substance, namely methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A)(viii); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a), (b)(1)(A)(viii). On appeal, Aguilar-Gonzalez contends the trial evidence was insufficient to support his convictions because the government failed to prove he was a knowing participant in the methamphetamine sale. After review, we affirm.[1]

## I. GENERAL PRINCIPLES

To convict a defendant of conspiracy to possess with intent to distribute a controlled substance, the government must prove (1) an illegal agreement existed, (2) the defendant knew of the illegal agreement, and (3) "the defendant, with knowledge, voluntarily joined it." United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005) (quotation marks omitted). To prove the underlying possession offense, the government must prove the defendant's (1) knowledge, (2)

---

[1]We review de novo the sufficiency of the evidence presented in a criminal trial. United States v. Dominguez, 661 F.3d 1051, 1061 (11th Cir. 2011). "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." Id. (quotation marks and brackets omitted). In conducting our review, "we "view[ ] the evidence in the light most favorable to the government," and "assume that the jury made all credibility choices in support of the verdict." Id. (quotation marks omitted).

possession, and (3) intent to distribute. United States v. Mercer, 541 F.3d 1070, 1076 (11th Cir. 2008). For both offenses, the knowledge element may be proven by circumstantial evidence. See United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005). While a defendant's presence at a drug deal alone is insufficient to prove knowledge, it is a probative factor the jury may consider. See Hernandez, 433 F.3d at 1333; United States v. Diaz-Boyzo, 432 F.3d 1264, 1269-70 (11th Cir. 2012).

## II.  SUFFICIENCY OF THE TRIAL EVIDENCE

At trial, the government presented ample evidence from which the jury could find that Aguilar-Gonzalez knowingly participated in the drug conspiracy and knowingly possessed the drugs. The government presented evidence that Aguilar Gonzalez delivered a bag containing seven Tupperware containers of methamphetamine to an arranged drug deal between his co-defendant, Exequiel Elorza-Barrera, and a confidential informant.

Specifically, co-defendant Elorza-Barrera testified that a drug dealer named Roberto Moreno instructed him to go to the airport and pick up Defendant Aguilar-Gonzalez, who worked for Moreno as a driver. Moreno sent Defendant Aguilar-Gonzalez to drive the drugs to the sale and ensure that Moreno was paid. According to Elorza-Barrera: (1) the night before the arranged drug deal, he and Defendant Aguilar-Gonzalez opened the Tupperware containers, checked the

3

methamphetamine, and then wrapped the containers in plastic wrap; (2) the next day, Defendant Aguilar-Gonzalez placed the bag containing the methamphetamine in a blue truck; and (3) Defendant Aguilar-Gonzalez drove the blue truck to a store to meet the confidential informant, while his co-defendant Elorza-Barrera drove a separate vehicle.

The confidential informant testified that, at the store, co-defendant Elorza-Barrera introduced Defendant Aguilar-Gonzalez as the "chauffeur" who would be "helping with the driving." In Defendant Aguilar-Gonzalez's presence, Elorza-Barrera told the confidential informant that "it," meaning the methamphetamine, was in the blue truck. Co-defendant Elorza-Barrera rode in the confidential informant's car to a nearby storage unit to conduct the transaction. Defendant Aguilar-Gonzalez followed in the blue truck with the drugs. Law enforcement conducted surveillance, observed the initial meeting at the store, and followed the two vehicles to the storage unit.

The confidential informant testified that, when the three men arrived at the storage unit, Defendant Aguilar-Gonzalez, without any instructions or questions, grabbed the bag of methamphetamine from the blue truck and tried to hand it to the confidential informant. The confidential informant could see the Tupperware containers of drugs inside the bag, and told Defendant Aguilar-Gonzalez to put the

4

bag down while he found the people who would pay for the drugs.  At that point, Defendant Aguilar-Gonzalez and his co-defendant Elorza-Barrera were arrested.

At the time, the storage unit was under surveillance by law enforcement, and the events in the storage unit were recorded on video.  The video recording was played for the jury.  The government presented evidence of two cell phones found on Defendant Aguilar-Gonzalez, which showed that both co-defendant Elorza-Barrera and the drug dealer Moreno were stored as contacts in one of Defendant Aguilar-Gonzalez's cell phones and that Defendant Aguilar-Gonzalez had multiple phone calls with them prior to the drug deal.  Defendant Aguilar-Gonzalez also exchanged multiple texts with Moreno, some relating to the planning of the drug deal, such as who would pick up the blue truck's title and whether the drugs had arrived.  The government also presented evidence that Defendant Aguilar-Gonzalez's fingerprint was found on the bag holding the methamphetamine, but that no fingerprints at all were found on the Tupperware containers.

This evidence established much more than Defendant Aguilar-Gonzalez's presence at a drug deal.  In fact, co-defendant Elorza-Barrera's testimony about Defendant Aguilar-Gonzalez's role in the drug deal, alone, was sufficient to establish Defendant Aguilar-Gonzalez's knowledge.  See Garcia, 405 F.3d at 1270 ("[U]ncorroborated testimony of an accomplice may be enough to support a conviction if the testimony is not on its face incredible or otherwise

5

insubstantial."). Although Aguilar-Gonzalez suggests co-defendant Elorza-Barrera's testimony was not credible, we must accept it as it was not contrary to the laws of nature or incredible on its face. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). Contrary to Aguilar-Gonzalez's contention, it was not necessary for co-defendant Elorza-Barrera to testify that he discussed with Defendant Aguilar-Gonzalez that the substance inside the Tupperware containers was methamphetamine for the government to carry its burden because knowledge can be proven by circumstantial evidence. Given the totality of the circumstances co-defendant Elorza-Barrera described, a jury could have reasonably inferred that Defendant Aguilar-Gonzalez knew he and Elorza-Barrera were handling a controlled substance and were involved in a drug deal.

Further, co-defendant Elorza-Barrera's testimony was corroborated by other evidence suggesting that Defendant Aguilar-Gonzalez was a knowing participant, including: (1) the testimony of the confidential informant and the video recording, showing that Defendant Aguilar-Gonzalez was the "driver" of the drugs and knew that the drugs he was carrying were intended for the confidential informant; (2) the fingerprint evidence showing that Defendant Aguilar-Gonzalez handled the bag containing the drugs; and (3) the cell phone records showing that Defendant Aguilar-Gonzalez had been in frequent contact with other members of the drug conspiracy in the days leading up to the drug deal. Based on all the evidence, the

6

jury reasonably found that Defendant Aguilar-Gonzalez knew a controlled substance was inside the Tupperware containers and knew he was participating in a drug deal.

**AFFIRMED.**