[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11141
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00301-RAL-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DESRICK GORDON,
a.k.a. Desrick Devon Gordon,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 10, 2016)

Before ED CARNES, Chief Judge, JORDAN, and JULIE CARNES, Circuit
Judges.

PER CURIAM:

After a jury trial Desrick Gordon was convicted of (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; and (2) possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 18 U.S.C. § 2.  He contends that there was insufficient evidence to support the jury's verdict.

## I.

This case is one of several arising out of a drug smuggling operation involving crew members of the Norwegian Sun, a cruise ship.  In late 2014, the Norwegian Sun made a scheduled stop in Honduras.  Jason Carmichael, a member of the ship's crew, used this opportunity to visit a club in Roatan.[1]  According to Carmichael, a man at the club approached him and offered him an opportunity to earn money by smuggling cocaine into the United States.  The plan was simple. Carmichael would carry the drugs on and off the Norwegian Sun in specially-designed underwear with a pouch between the legs.  He would wear tights over the underwear to keep the drugs in place.  And he would wear his pants slightly lower than usual so that security would not find the drugs if he was subjected to a pat-down.  Carmichael would be paid two thousand dollars for each package he

---

[1] Carmichael was later called as a government witness as Gordon's trial.

2

successfully delivered to Tampa, Florida.  He agreed to participate and carried drugs into the country several times using this method.

Carmichael was not the only crew member who smuggled cocaine into the United States on board the Norwegian Sun.  Indeed, Carmichael himself recruited several of his shipmates to participate in the smuggling operation.  By March 2014 Arkine John, Teffan Delice, Alfred Ince, Jason Cherubin, and several others had joined the operation.

At Gordon's trial, Carmichael testified that Gordon had approached him and said he wanted to start running drugs, too.  According to Carmichael, Gordon needed the money for his son, who has asthma.  He agreed to let Gordon join the operation.  But because Gordon was on duty, he was unable to leave the ship when Carmichael left to collect a shipment of drugs.

Carmichael testified that Gordon was upset that he was left behind because he needed the money for his sick child.  Seeking to solve two problems at once, Carmichael arranged for Gordon to offload one of the two packages Arkine John had brought on board, because John had trouble walking with both packages between his legs.  Another coconspirator, Cherubin, testified that a package had almost fallen out of John's pants on the way onto the ship, causing Carmichael to be concerned that John would get them all caught if he tried to take two packages

3

off the ship in Tampa.  Carmichael testified that it was agreed that Gordon would receive one thousand dollars for transporting the package off the Norwegian Sun.

Carmichael testified that, upon arriving in Tampa and successfully disembarking with the drugs on March 8, 2015, the conspirators called two contacts to pick them up near the Hooters restaurant at the port.  Because everyone could not fit in the car, Gordon, Ince, and John removed their packages in a public restroom near the restaurant and gave them to Carmichael.  After that, Carmichael, Delice, and Cherubin went with the contacts in their vehicle.

What the conspirators did not know is that the Department of Homeland Security was already surveilling the contacts.  Agents followed the vehicle to a Residence Inn.  Carmichael testified that the contacts took them to a room at the hotel where the three conspirators handed over the drugs and received their payment.  The contacts also gave Carmichael some money to take back to "the boss" in Honduras.  After that, the contacts drove the conspirators back to the Hooters, dropped them off there, drove back to the hotel to shower, and headed on their way.  The contacts were soon stopped by law enforcement officers, who found the cocaine in their vehicle.  Most of the other conspirators were quickly arrested trying to board the ship or in their cabins.  Gordon managed to make it back onto the Norwegian Sun and was not identified and arrested until some time later.

4

Ince and Delice also testified at Gordon's trial and their testimony largely matched Carmichael's account of these events, though there were some minor inconsistencies. For instance, Carmichael testified that he was given drugs by "the boss" and his son in Honduras, but none of the other conspirators knew anything about the boss having a son. While Carmichael testified that he talked to John about giving Gordon one of his packages, Cherubin testified that Carmichael was arguing with John after John almost dropped a package coming on board. Cherubin claimed he was the one who suggested giving one of the packages to Gordon, not Carmichael. And so on.

Gordon moved for a judgment of acquittal at the close of the government's case. After the district court denied the motion, Gordon took the stand to testify in his own defense. He testified that, although Carmichael had approached him about joining the conspiracy, he had rejected the invitation. According to Gordon, John owed him six hundred dollars. Gordon testified that he left the ship with the others on March 8 because John had promised to pay him the money that day and he wanted to send it to the mother of his sick child. He claims he was only loitering around the Hooters because it offers free wireless internet access to its patrons.

In rebuttal, the government called Jonathan Vasquez, who had shared a jail cell with Gordon. Vasquez testified that Gordon had confessed to transporting the drugs and giving them to Carmichael in a public restroom. He also asserted that

5

Gordon said he was going to track down the families of the coconspirators who testified against him.

At the close of all evidence, the district court denied Gordon's renewed motion for a judgment of acquittal. The jury deliberated and found Gordon guilty of both charges against him: conspiracy to possess with intent to distribute five kilograms or more of cocaine and possession with intent to distribute five kilograms or more of cocaine.

## II.

Gordon raises only one issue on appeal. He contends that there is insufficient evidence to support his convictions and that, as a result, the district court erred by denying his motion for a judgment of acquittal.

"We review both a challenge to the sufficiency of the evidence and the denial of a [Federal] Rule [of Criminal Procedure] 29 motion for judgment of acquittal de novo." United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011). "In so doing, [we view] the evidence in the light most favorable to the Government and resolve[ ] all reasonable inferences and credibility evaluations in favor of the verdict." United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014). "We must affirm [Gordon's] convictions unless, under no reasonable construction of the evidence, could the jury have found [him] guilty beyond a reasonable doubt." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).

6

"To sustain a conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846, the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant . . . knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." United States v. Reeves, 742 F.3d 487, 497 (11th Cir. 2014) (quotation marks omitted). The government proved all of that in this case. The testimony of several witnesses at trial established that Carmichael and several others agreed to transport drugs for a boss in Honduras; that Gordon not only knew of the conspiracy but asked to join it; and that he met with the other conspirators, took possession of a package containing cocaine, and carried it to a delivery point.

To sustain a conviction for possession with intent to distribute drugs "the government [must] establish three elements: (1) knowledge; (2) possession; and (3) intent to distribute." United States v. Mercer, 541 F.3d 1070, 1076 (11th Cir. 2008). The government proved that. The testimony of the government's witnesses was sufficient to show that Gordon knew the packages the conspirators were transporting contained drugs, that he took possession of one of those packages, and that the purpose of the venture was to deliver the drugs to the boss' contacts in Tampa.

Gordon contends that the evidence is insufficient because the jury should not have believed the testimony of his coconspirators and Vasquez. He relies on

Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512

(1985), for the proposition that:

> Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.

But his reliance on that case is misplaced. Unlike the Anderson case, this is not a

civil case and it was tried before a jury, not a judge, so the clear error standard does

not apply.

As this Court explained in United States v. Flores, 572 F.3d 1254, 1263

(11th Cir. 2009), in a criminal case tried before a jury "[c]redibility determinations

are left to the jury and the jury's verdict will not be disturbed on appeal unless the

testimony is incredible as a matter of law." (Quotation marks omitted).  And

"[t]estimony is only incredible if it relates to facts that the witness could not have

possibly observed or events that could not have occurred under the laws of nature."

Id. (quotation marks omitted).

None of the testimony in this case was incredible as a matter of law.  The

witnesses' accounts of the conspiracy and Gordon's participation in it differed

from one another as to some details.  But none of the witnesses testified about

events they "could not have possibly observed."  Id.  Nor did they testify to events

that defied the laws of nature.  As a result, it was up to the jury to resolve the

8

inconsistencies in the witnesses' testimony.  Whether we would have resolved those inconsistencies in the same way if we were in the jury's place is irrelevant. See United States v. Ellisor, 522 F.3d 1255, 1271 (11th Cir. 2008) ("[T]he question is whether reasonable minds could have found guilt beyond a reasonable doubt, not whether reasonable minds must have found guilt beyond a reasonable doubt.")

That the witnesses against Gordon were, as Gordon protests in his brief, "admitted liars and drug dealers who had worked together in the past" is beside the point.  "[T]estimony is not incredible solely because it is proffered by an array of scoundrels, liars and brigands."  Flores, 572 F.3d at 1263 (quotation marks omitted).  The witnesses' pasts and motivation to lie based on their plea bargains with the government "were made known to the jury, and the jury was entitled to weigh their testimonies accordingly."  id.

Moreover, there was other evidence in this case that supports the jury's verdict.  For one thing, the jurors could have believed Vasquez's account of Gordon's jailhouse confession.  For another, Gordon himself took the stand and "a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt."  United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).  "Having seen and heard [Gordon's] testimony [denying his involvement in the conspiracy], the jury was free to discredit [his] explanation, to infer that the opposite of what [he] said was true, and to consider that inference

9

as substantive evidence of [his] guilt." United States v. Hough, 803 F.3d 1181, 1188 (11th Cir. 2015). Finally, video surveillance from outside the Hooters restaurant and DHS's investigation corroborated some aspects of the conspirators' testimony.

In short, "[t]he evidence [in a criminal case] need not be inconsistent with every reasonable hypothesis other than guilt" in order to be sufficient to support a jury's guilty verdict. Gamory, 635 F.3d at 497 (quotation marks omitted). Instead, "we allow the jury to choose among several reasonable conclusions to be drawn from the evidence." Id. (quotation marks omitted). In this case, the jury could have decided that neither the conspirators nor Vasquez were telling the truth, believed Gordon, and acquitted him. Instead, it found the conspirators and Vasquez — or some of them, or one of them — credible, disbelieved Gordon, and found him guilty. We cannot say that choice was unreasonable.

**AFFIRMED.**