[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10809
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00037-VMC-AEP-1


DAVID PAUL LYNCH,

Defendant-Appellant,

versus

UNITED STATES OF AMERICA,

Plaintiff-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 14, 2019)

Before NEWSOM, GRANT, and FAY, Circuit Judges.

PER CURIAM:

David Lynch appeals his convictions for eight counts of production of child pornography, one count of receipt of child pornography, one count of possession of child pornography, one count of traveling in foreign commerce to engage in illicit sexual conduct with a minor, and one count of attempting to travel in foreign commerce to engage in illicit sexual conduct with a minor. On appeal, Lynch argues that (1) the government did not introduce sufficient evidence to prove that his victims were under 18 years old or that he traveled with the intent to commit illicit sex acts and (2) the district court abused its discretion by denying his request for a jury instruction relating to hearsay statements. After careful review, we affirm.

I.

A.

In June 2005, Lynch traveled to the Philippines and engaged in sexual acts with a girl he called Liza. He filmed their sex acts with video cameras from two different angles, and also took still photos of her genitals. In an electronic spreadsheet that he used to keep track of female contacts in the Philippines, Lynch described Liza as "young" and "15." And one year later, Lynch said in online chats that he was Liza's "ex bf," that he took "naked pics" of her, and that "she is only 16 he he."

Lynch returned to the Philippines in December 2006.  Prior to the visit, he asked a contact named Fhey to "find 4 girls" for him to engage in sexual acts with. Fhey sent him pictures of the girls, and Lynch expressed particular interest in one girl.  Fhey informed him that the girl's name was Erica, and that she was 13 years old.  Lynch replied, "nice . . . is she virgin?"  On his trip, he made a video of himself engaging in sex acts with four people, including Erica.  He also took still photographs of Erica, focusing on her genitals.

When he returned home in late December 2006, Lynch chatted online with "Thomas"—another one of Fhey's clients—to compare notes on their most recent trips to the Philippines.  Thomas showed Lynch a picture of a girl named Rica and said, "she is 13."  Lynch commented that Rica had "a gorgeous body."  Thomas asked Lynch if he liked to "roleplay" or "ageplay" with the girls.  Lynch replied, "no need to role play when the ages are real."  Half a year later, on yet another trip to the Philippines, Lynch met Rica and took a close-up picture of her genitals.

By 2015, Lynch had developed an online relationship with a Filipino woman named Rose who sent Lynch erotic and pornographic photos of herself and her 11-year-old daughter, Denise, in exchange for a laptop and money.  In 2016, he asked Rose, "how old is she now?"  And Rose replied, "this December she is 13 yrs old." That December, Lynch made plans to meet up with Rose and Denise "in real" in

the Philippines. He and Rose discussed at length what sex acts Denise was "ready" to perform.

Meanwhile, based on a tip sent to the National Center for Missing and Exploited Children, the FBI obtained a search warrant for various email and online messaging accounts that turned out to belong to Lynch. On December 29, 2016, the FBI arrested Lynch as he was boarding a plane to the Philippines. The FBI found sex toys, male performance drugs, cameras, data storage devices, and a large amount of candy in his luggage. When FBI agents searched his home, they found thousands of pornographic videos and photos featuring what appeared to be underage girls.

## B.

On September 6, 2017, a federal grand jury returned a twelve-count, third superseding indictment against Lynch. Counts 1-5 and 7-9 charged Lynch with production and attempted production of child pornography—specifically, for taking sexually graphic photos and videos of Liza, Erica, and Rica. Each count alleged that Lynch "did use and persuade and attempt to use and persuade a minor" to engage in sexually explicit conduct for the purpose of producing child pornography. *See* 8 U.S.C. § 2251(a) and (e). In other words, the indictment charged Lynch both with *actual* production, if the jury found that the girls were

4

actually under 18, and—in the alternative—with *attempted* production, if the jury found that Lynch believed the girls to be minors.  Under the statute, the jury could convict Lynch on either theory, so long as the jurors unanimously agreed which one.

Count 6 charged Lynch with traveling in foreign commerce with intent to engage in illicit sexual conduct with a minor—specifically, for the December 2006 trip where he was caught on video engaging in sex acts with Erica—in violation of 18 U.S.C. § 2423(b).  Count 10 charged Lynch with knowing receipt of child pornography—specifically, for receiving photos of Denise over email—in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  Count 11 charged Lynch with *attempting* to travel in foreign commerce with intent to engage in illicit sexual conduct with a minor—specifically, for the December 2016 trip where the FBI caught him on his way to meet Denise—in violation of 18 U.S.C. § 2423(b) and (e).  Count 12 charged Lynch with knowing possession of child pornography—a catch-all charge covering thousands of child pornography videos and photographs found in the FBI raid of his home—in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

At trial, the government presented testimony and evidence that included photos, videos, and Lynch's own texts and online chat messages.  Lynch did not dispute that he produced, starred in, received, and possessed all of the

pornographic photos and videos.  He admitted that he had sent and received all of the messages attributed to him.  He acknowledged that he had traveled to the Philippines many times to pay for sex.  His defense was that the chats were "all a fantasy," that he genuinely believed Erica, Liza, Rica, and Denise were adult women, and that they were in fact adult "prostitutes."  The crux of his argument was that adult "women in the Philippines look different than women throughout the rest of the world" and physically resemble underage girls.

In addition, Lynch requested a limiting instruction regarding statements about the victims' ages made by various unavailable declarants—including Thomas, pimps, and the girls themselves—contained in the videos and online chat messages shown to the jury.  Lynch did not contest that the statements were admissible to prove what he himself *believed* about the girls' ages.  He argued, however, that the statements were inadmissible hearsay if offered to prove the truth of the matter asserted—that is, as substantive evidence of the ages of the victims.  After consideration, the district court declined to give a limiting instruction.

During deliberations, the jury requested clarification on the *mens rea* required for the various charges.  The jury submitted a written question: "If the defendant believed Liza, Erica, Rica and Denise were under the age of 18 (whether or not they were) is that sufficient to satisfy the condition that they be a minor?"  Lynch and the government agreed on a written response: "Yes as to counts 1, 2, 3,

4, 5, 7, 8, 9, & 11," and "No as to counts 6, 10 & 12."[1]  *Id.*  In other words, the parties stipulated that the government only had to prove that the girls were *actually minors* to obtain a guilty verdict on the travel, receipt, and possession charges—*not* the production of child pornography charges, or the attempted travel charge.

The jury convicted Lynch on all counts.  Lynch now appeals.

## II.

## A.

Lynch first contends that the government failed to introduce sufficient evidence that Liza, Erica, Rica, and Denise were under 18 years old or that he traveled with the intent to commit illicit sex acts.  We review a challenge to the sufficiency of the evidence de novo, viewing "the evidence in the light most favorable to the government."  *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).  All "reasonable inferences and credibility choices are made in the government's favor."  *Id.*  Evidence is sufficient if "a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *Id.*

A person commits the crime of production of child pornography when he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . .

---

[1] The government may have conceded too much on Count 6, which charged Lynch with traveling in foreign commerce with the intent to engage in a sexual act with a minor.  We have said that convictions "for travel in interstate commerce with intent to engage in a sexual act with a minor in violation of 18 U.S.C. § 2423(b) do not require the existence of an actual minor victim." *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir. 2010).

any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Importantly, § 2251 criminalizes both actual and attempted production of child pornography. The crime of "attempted production of child pornography" under § 2251(a) and (e) "does not require an actual minor victim," so long as the defendant "believed [the victim] to be" underage. *United States v. Lee*, 603 F.3d 904, 912–13 (11th Cir. 2010) (upholding a conviction under § 2251 where the defendant attempted to use and persuade a fictitious minor, invented as part of a sting operation, to engage in sexually explicit conduct for the purpose of producing child pornography).

At trial, Lynch conceded that Counts 1-5 and 7-9 did not require an actual minor victim, and that the jury could find him guilty if he believed the girls to be underage. On appeal, Lynch does not even contest that the evidence was sufficient to conclude that he *believed* his victims to be minors—and that is just as well, because the evidence for that proposition is overwhelming. Instead, for the first time on appeal, he argues that deficiencies in the indictment and jury instructions required the government to prove *actual* production of child pornography, not *attempted* production. These new arguments are meritless and likely waived—the indictment alleged that Lynch "did use and persuade *and attempt to use and persuade* a minor" to engage in sex acts for child pornography, and Lynch explicitly agreed in response to the jury's written question that the government did

8

not need to prove actual age in order to prevail on those counts.  But we need not dwell on these new arguments, because in any event, a reasonable juror could have concluded from the evidence that Liza, Erica, Rica, and Denise were minors.

In addition to introducing Lynch's own statements about the girls' ages, the government called a pediatrician, Dr. Lambert, as an expert witness.  He testified that Liza was "early-ish in puberty," Erica was "nowhere close to being to the end of puberty," Rica was "not done with puberty yet," and Denise was "[e]arly in puberty"—and that 99% of human females still in puberty are under the age of 18. Even Lynch's own expert, who testified only for the proposition that doctors can make mistakes in assessing the ages of women depicted in pornography, refused to testify that Liza, Erica, Rica, or Denise were over the age of 18.  When shown a photo of Denise, he said, "Looks like a child."

Most importantly, the jury also saw dozens of photographs and videos—both pornographic and nonpornographic—of all four girls.  The jury could reasonably have concluded, based on its own judgment and perception, that Lynch's victims were minors.  *Cf. United States v. Smith*, 459 F.3d 1276, 1287 (11th Cir. 2006) (stating that "reasonable inferences that could be drawn" from "actual photographs" supported a jury finding that "the victim was so obviously a minor that the defendant must have known as much").  Lynch has given this Court no reason to think otherwise.

9

There was also sufficient evidence to support a finding that Lynch traveled to the Philippines with the intent to engage in illicit sexual conduct with a minor in 2006, and that he was attempting to travel to the Philippines with the intent to engage in illicit sexual conduct with a minor when he was stopped at the airport by the FBI in December 2016. As to the 2006 offense, there was evidence that Lynch made arrangements with Erica's pimp in advance of his visit. And as to the 2016 offense, Lynch and Rose communicated in detail about what sex acts he and Denise would perform. Lynch also kept a calendar, in which he had January 7-10, 2017 blocked off for "Rose Denise." Finally, he was apprehended while boarding a flight with a bag full of male performance drugs, candy, and sex toys. There was sufficient evidence for the jury to conclude that Lynch was traveling to the Philippines in order to engage in sexual conduct with Denise, who he believed had just turned 13.

### B.

Second, Lynch argues that the trial court abused its discretion by failing to give a limiting instruction with regard to hearsay statements contained in Lynch's videos and online chat messages. We review the district court's refusal to give a limiting instruction for abuse of discretion. *United States v. Gonzalez*, 975 F.2d 1514, 1516 (11th Cir. 1992). Even if the ruling was an abuse of discretion, "it will not result in a reversal of the conviction if the error was harmless." *United States*

10

*v. Docampo*, 573 F.3d 1091, 1096 (11th Cir. 2009).  An error is harmless and "does not warrant reversal if the purported error had no substantial influence on the outcome" of the trial and "sufficient evidence uninfected by error supports the verdict."  *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992).

If a court admits evidence that is admissible for one purpose but inadmissible for another, and the defendant makes a "timely request" for a limiting instruction, the court "must restrict the evidence to its proper scope and instruct the jury accordingly."  Fed. R. Evid. 105.  Here, the court allowed in statements about the alleged victims' ages that were admissible to prove Lynch's state of mind, but inadmissible to prove that his victims were minors.  The government argues that some of the statements at issue may have been admissible under well-established hearsay exceptions; in some cases, for instance, Lynch "manifested that [he] adopted or believed [them] to be true."  Fed. R. Evid. 801(d)(2)(B).  But hearsay exceptions at best account for some, not all, of the statements about age submitted to the jury.  Accordingly, the district court likely erred when it denied Lynch's request for a limiting instruction.

Nevertheless, any error here was harmless.  As we explained at length in addressing Lynch's first claim, there was sufficient admissible evidence that Lynch's victims were minors—including expert testimony, the admissible chat messages, and the many photos and videos of the victims.  We cannot say that

11

hearsay within the chat transcripts had a substantial influence on the outcome of the trial, so the error does not warrant reversal.

**AFFIRMED.**