**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Mary HOLMES, Defendant-Appellant.**

**No. 84–8573.**

United States Court of Appeals, Eleventh Circuit.

Aug. 5, 1985.

---

W.W. Larsen, Jr., Dublin, Ga. (Court Appointed), for defendant-appellant.

W. Leon Barfield, Asst. U.S. Atty., Frederick Kramer, Savannah, Ga., for plaintiff-appellee.

Before RONEY and FAY, Circuit Judges, and DUMBAULD *, District Judge.

FAY, Circuit Judge:

In June, 1984, Mary Holmes was convicted in federal district court for her role in an extortion scheme whereby investor's bribe money was channeled through her to the Mayor of Augusta, Georgia, in return for his support in getting the investor's proposed riverfront projects approved. The following issues are raised by Holmes on appeal: (1) the trial court's denial of her motion for a mistrial based on a witness' prejudicial remark; (2) the refusal of the trial judge to give four of the appellant's requested jury instructions; (3) the trial court's refusal to grant appellant's motion for judgment of acquittal; and (4) the trial judge's refusal to grant appellant's motion for a new trial. We affirm.

FACTS

The appellant in this case, Mary Holmes, is a self-employed real estate broker in Augusta, Georgia. She shares an office in Augusta with her brother, Arthur Holmes, who is also a real estate broker. In 1981, a licensed real estate agent named Edward McIntyre was elected Mayor of the City of Augusta. After having been elected, but prior to beginning his term in office, McIn-

tyre affiliated his real estate license with appellant's brother, Arthur Holmes.

At the time McIntyre assumed the office of Mayor, the City of Augusta was in the process of offering for sale certain parcels of riverfront property. Mary Holmes had successfully bid on one of these tracts of land but her deposit had been refunded when the City Council learned that she was without financial backing for her proposed development. After McIntyre became Mayor, however, he personally saw to it that contract negotiations with Mary Holmes were resumed. This marked the first time in nearly fifteen years that city officials continued to deal with a bidder whose deposit had been refunded for misrepresentation of financial backing.

As these negotiations continued, other investors expressed an interest in Augusta's riverfront property. These investors were repeatedly told by Mayor McIntyre that they would have to work through Mary Holmes. Moreover, when the Mayor finally did meet with these investors, Mary Holmes was always present.

In July, 1983, Special Agent Richard Thirwell of the FBI was introduced to Mayor McIntyre in an undercover guise as Dick Thomas, the representative of a group of Florida investors interested in riverfront development in Augusta. (Agent Thirwell will hereafter be referred to as "Thomas"). As with the other investors, Thomas was told by Mayor McIntyre that he would have to work through Mary Holmes. Thomas agreed.

Throughout the latter part of 1983, there were numerous meetings and conversations between Thomas and Mayor McIntyre, and between Thomas and Mary Holmes. These discussions were all taped. In one instance, the Mayor demanded $100,000 in cash and a condominium in the completed project in exchange for his support in getting city officials to approve the Florida investors' bid and project. The Mayor continually insisted that Thomas work through

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

Mary Holmes and include her as a limited partner. In another instance, Thomas tried to give Mayor McIntyre $5,000 in cash in a plain envelope while they were having lunch together in a public restaurant. The Mayor declined, telling Thomas to save it for a later time when it could be worked in as a campaign contribution. In reference to this incident, Holmes cautioned Thomas that pushing envelopes at the Mayor in public places was not the way to do business. Holmes went on to explain that she was the front for the Mayor, and that Mayor McIntyre indeed required money for his official support. Appellant further stated that the money would be held by her and two unnamed others, and then funneled to the Mayor after he left office.

## COURSE OF PROCEEDINGS

Appellant was indicted along with Mayor Edward McIntyre in January, 1984, for conspiracy to violate 18 U.S.C. § 1951 (Hobbs Act), and for attempted violation of that same statute. These two counts stem from the Act's prohibition against extortion under color of official right and by threat inducing fear of economic harm or loss.

Appellant was tried separately from her co-defendant and was found guilty by a jury on both counts in June, 1984. As to Count One, Holmes was sentenced to four years incarceration and fined $5,000. Imposition of sentence as to Count Two was suspended and it was ordered that appellant be placed on probation for five years following her release from imprisonment. Appellant thereafter appealed.

## REFUSAL TO DECLARE MISTRIAL

■ The primary issue on appeal concerns an arguably prejudicial and unfounded statement by a witness which implied that the appellant received financial backing from the mafia. Holmes argues on appeal that the trial court's refusal to grant her motion for mistrial on account of this remark constitutes reversible error. We disagree.

During the trial, the government sought to establish that Holmes had a history of financial failures in regard to development projects and that it was therefore unlikely that the city would, in the normal course of business, continue to consider her a serious bidder. To illustrate this point, the government introduced evidence regarding Holmes' previous involvement with Augusta's Old Government House. This building is one of the most historic structures in Augusta and was sold by Historic Augusta to Holmes for the purpose of historic revitalization. Holmes began revitalization of this historic structure by removing the back of the building and replacing it with a non-conforming concrete block structure which was to become "Mama's Money" bar. The project, however, was never completed and the building never occupied.

In regard to these events, the following exchange took place on direct examination between the prosecutor and the Augusta City Attorney, Stanley Jackson:

Q. Did she at any time indicate who her financial backers were for the Government House?

A. No, she did not and I made some aside on that, inadvertently, as a matter of fact.

Q. I don't understand.

A. Well, I used to call Mama's Money mafia money and....

R.Vol. 5 at 152–53. Holmes immediately moved for a mistrial. The trial court instructed the jury to disregard the remark about the mafia and Holmes' motion was thereafter denied.

■ "The decision to grant a mistrial lies within the sound discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement...." *United States v. Satterfield,* 743 F.2d 827, 848 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). In denying appellant's motion for a mistrial, the trial judge noted that the witness obviously "had some sort of axe to grind" with Holmes. R.Vol. 5 at 182. The judge further reasoned as follows:

I think the instruction I gave to disregard that remark and the manner and fashion in which it was presented and

received by the jury and the manner in which it was stricken from the record by the Court leave the jury with the appropriate impression that it was a voluntary comment or dig and I'm going to deny your motion for a mistrial. . . .

R.Vol. 5 at 183.

These observations by the trial judge constitute the precise reason why this court chooses to defer to the trial court's discretion on such matters. We harbor no doubt that the remark was improper and potentially prejudicial. But it is the trial judge who can best determine the impact of the statement. After observing the demeanor of the witness and the reaction of the jury, the trial judge concluded that the prejudicial impact was minimal. We find his reasoning convincing. Moreover, we are convinced that the potential for prejudice was muted by the court's immediate curative instruction. *See United States v. Bain,* 736 F.2d 1480, 1489 (11th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984). Accordingly, the trial court did not err in denying Holmes' motion for a mistrial.

JURY INSTRUCTIONS

■ Appellant next contends that the trial court erred in refusing to give certain jury instructions requested by the defense. We have reviewed appellant's claim, however, and find that the gist of Holmes' requested instructions was adequately covered in the charges which were given. It is well-settled that the trial court need not charge the jury in the exact language requested by counsel so long as the charge given, taken as a whole, correctly states the law. *United States v. Silverman,* 745 F.2d 1386, 1399 (11th Cir.1984); *United States v. Solomon,* 686 F.2d 863, 876 (11th Cir.1982). Because the substance of Holmes' requested instructions was adequately covered, appellant's complaint is without merit.

DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL

■ Appellant next argues that the trial court erred in denying her motion for judgment of acquittal. We disagree. In support of her motion, Holmes asserts seven instances where she contends the allegations contained in the indictment are unsupported by the evidence. These allegations, however, were quite obviously proven to the satisfaction of the jury. Moreover, because appellant's argument is, in effect, a challenge to the sufficiency of the evidence, this court will view the evidence in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Payne,* 750 F.2d 844, 855–56 (11th Cir.1985). With this standard in mind, we have reviewed the evidence and conclude that a reasonable jury could have found that the evidence established guilt beyond a reasonable doubt. *See id.* Consequently, the trial court did not err in this respect.

■ The only other issue raised by appellant in support of her motion concerns whether a government undercover agent may be the victim of an attempted extortion. According to Holmes, economic harm to the agent is a factual impossibility; therefore, the allegations and evidence do not support her extortion conviction. We disagree. The fact that the FBI undercover agent represented a fictitious business entity is not a defense to an extortion charge. *See United States v. Brooklier,* 685 F.2d 1208, 1217 (9th Cir.1982) (in prosecution for Hobbs Act violations, court rejected argument that there was no basis for federal jurisdiction because FBI business establishment was a fiction), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *accord United States v. Jannotti,* 673 F.2d 578, 592–94 (3d Cir.) (en banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *see also United States v. Smith,* 749 F.2d 1568, 1569 (11th Cir.) (per curiam), *cert. denied,* — U.S. ——, 105 S.Ct. 2680, 86 L.Ed.2d 698 (1985) (where defendants were charged in connection with a scheme to defraud, fact that government agent posed as "real" victim is of no consequence).

We thus conclude that the evidence was sufficient to sustain appellant's convictions on both counts. *See* Fed.R.Crim.P. 29(a). Accordingly, the trial court did not err in denying appellant's motion for judgment of acquittal.

## DENIAL OF MOTION FOR NEW TRIAL

Appellant's final argument is that the trial court erred in not granting her motion for a new trial. Holmes brought this motion on the basis of ineffective assistance of counsel, claiming specifically that her attorney interposed a defense of entrapment against her express desires, and that such defense inured to her detriment due to admissions made by counsel in connection with that defense.

■ In denying the motion for a new trial, the district court rejected Holmes' claim that from the outset she had been opposed to an entrapment defense. We find the district court was on solid ground in doing so. The appellant, had she truly been opposed to her attorney's reliance on that defense, had ample time and opportunity to voice her objections to the trial court. As to Holmes' entrapment defense, the trial court excused the jury, conducted an inquiry, took a break to allow research on entrapment, reconvened for further inquiry, broke for lunch, and then reconvened for yet further discussion of the matter. Holmes sat silent through it all. Although Holmes claims she instructed her attorney not to assert an entrapment defense, we think her silence shows otherwise. In addition to being present during extended discussions about the defense, Holmes testified at some length about Thomas "coming on" to her and "baiting me" (R. 687). She explained her incriminating statements with such answers:

> I felt if there was any outside chance that he was legitimate, I certainly wanted to get his business and so therefore I told him that I had political clout. I had heard those things all my life, but I now really had done that, I felt that's what he wanted to hear, that I had some political clout so I told him that.

(R. 688). All of this testimony appears tailored in support of the defense of entrapment. Accordingly, we find that the trial judge was justified in concluding that Holmes' attorney did not interpose the entrapment defense against his client's wishes.

■ Furthermore, the record indicates that an entrapment defense was never fully presented to the jury. To raise the defense, the defendant must make an admission of the physical acts alleged in the indictment. The obvious potential danger to a defendant who raises entrapment is that the jury will accept the admission of guilt and reject the notion that the government induced the crime. Yet here, the record shows that there was never an admission of any kind made to the jury, nor did the judge instruct the jury that any admission had been made. Thus, Mary Holmes received the benefit of the entrapment defense by alleging government inducement, without the burden of making any admission to the jury. If it can be said that entrapment was raised, it clearly was not prejudicial to the defendant here.

■ A motion for a new trial is addressed to the sound discretion of the trial court, and absent an abuse of discretion, this court will not intervene. *United States v. Gregory*, 730 F.2d 692, 706 (11th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). In the instant case, we find no abuse.

AFFIRMED.