[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14248

_____

D.C. Docket No. 1:12-cr-00001-WLS-TQL

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SHIRLEY DENISE BURK,
DARRYL BURK,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

(June 14, 2018)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and UNGARO,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida, sitting by designation.

Following oral argument and review of the record, we reject the arguments advanced by the Appellants and affirm in all respects. Because we write for the parties, we set out only what is necessary to explain our decision.[1]

## I.    The Charged Conspiracy

The Government's theory of this case is that over a nearly fourteen-year period, a single, unified conspiracy existed between Elbert Walker[2] ("Walker") and a number of other individuals, including Appellants Darryl Burk ("D. Burk") and Shirley Burk ("S. Burk"). As charged in the indictment, the co-conspirators jointly participated in a scheme to unlawfully enrich themselves by acquiring and transferring houses among each other, setting fire to the houses, making insurance claims for the fire losses, and making false statements in court proceedings to conceal their unlawful conduct. The indictment further alleged that the co-conspirators accomplished their unlawful plan by means that included mail fraud, arson and the making of false declarations.

---

[1] As to issues not specifically addressed, we affirm without discussion.

[2] Walker was the "ring leader" of the overall conspiracy at issue in this case. While he stood trial together with the Appellants, his appeal has been severed and will be considered separately.

The Government's case focused on five different houses in the Middle District of Georgia, all owned by Walker, four of which were intentionally set on fire and one of which was damaged by fire on at least three separate occasions. After a fourteen-day trial, a federal jury convicted both D. Burk and S. Burk of participating in the charged conspiracy. The jury specifically found that D. Burk conspired to commit mail fraud, and that S. Burk conspired to commit mail fraud and arson, and to make false declarations. These defendants now appeal their convictions.

II.    Appellant Shirley Burk's Singular Claim

Appellant S. Burk asserts that the District Court erred in denying her motion for judgment of acquittal. According to S. Burk, there was insufficient evidence presented at trial to sustain her conviction for conspiracy to commit arson in violation of 18 U.S.C. § 844(n) in connection with 18 U.S.C. § 844(i).

Under 18 U.S.C. § 844(i) and (n), it is a crime to conspire to maliciously damage or destroy, or attempt to damage or destroy, "by means of fire . . . any building . . . or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i); *see id.* § 844(n) (making it a crime to conspire to commit arson under § 844(i)). In general, in order to prove a

3

conspiracy, the Government must prove: (1) an agreement by two or more individuals to commit an unlawful act; (2) knowing and voluntary participation; and (3) an overt act by a conspirator.[3] *See United States v. Gonzalez*, 834 F.3d 1206, 1219 (11th Cir. 2016) (concerning conspiracies under 18 U.S.C. § 371). The Government may prove a conspiracy with circumstantial evidence alone "[b]ecause the essential nature of conspiracy is secrecy."[4] *United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998).

We review challenges to the sufficiency of the evidence *de novo*. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). To determine whether the District Court erred by denying S. Burk's motion for judgment of acquittal, we must view the evidence in the light most favorable to the Government,[5] and decide whether a rational trier of fact could have found the essential elements of the charge were proven beyond a reasonable doubt.

---

[3] We assume for purposes of this opinion that the Government must prove an overt act to sustain a conviction for conspiracy to commit arson under § 844(n).

[4] Additionally, because the essence of an illegal conspiracy is the agreement to commit an unlawful act, the Government need not prove that a defendant was successful in carrying out the illegal object of the conspiracy. *See Iannelli v. United States*, 420 U.S. 770, 777 (1975).

[5] All reasonable inferences and credibility choices are made in the Government's favor. *See United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) (citing *United States v. Lyons*, 53 F.3d 1198, 1202 (11th Cir. 1995)).

4

*See United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008) (citing

*United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999)).

A review of the record shows that there was substantial evidence

establishing S. Burk's knowledge of and voluntary participation in the

conspiracy to commit arson. The evidence showed S. Burk filed insurance

claims for personal property losses she claimed to have suffered in three

separate fires that were intentionally set[6] and which occurred at Walker-

owned properties where she was a tenant. One of the fires occurred just days

before her insurance policy was scheduled to be canceled. S. Burk also made

false statements in support of insurance applications, hiding her prior fire

losses.[7]

Though the evidence failed to show that S. Burk herself was involved

in setting the houses on fire, a reasonable jury could conclude from these

facts that S. Burk was aware of and joined in the broader scheme to set

---

[6] Expert testimony at trial established that the fires at the Walker-owned properties were intentionally set. When we refer to "arsons" or "intentionally-set fires" herein, such characterizations are based on the expert conclusions admitted at trial, which Appellants do not dispute on appeal.

[7] At the trial, Mary Tillman, who worked for Insurance Services of the South in Moultrie, Georgia, testified that in 2002, she assisted S. Burk in completing an insurance coverage application for the Walker-owned property at 1097 Bondvilla Drive. Tillman further testified that S. Burk signed the application stating that she had never had a policy declined or cancelled and that she had no prior fire losses in the last three years. However, the Government entered into evidence a sworn statement by S. Burk in which she stated that in 1999 she experienced a fire loss at the Walker-owned property at 410 Oak Street.

houses on fire and file fraudulent insurance claims. Accordingly, viewing the trial evidence in the light most favorable to the Government, we conclude that a reasonable jury could find beyond a reasonable doubt that S. Burk knowingly entered into and voluntarily participated in the conspiracy to commit the arsons at issue in this case.[8]

III.    Appellant Darryl Burk's Claims

Appellant D. Burk appeals his conviction for conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349 in connection with 18 U.S.C. § 1341. D. Burk asserts that the District Court committed reversible error by not granting his: (a) motion for judgment of acquittal; (b) motion for a mistrial following Secret Service Agent Stan Burruss' testimony that law enforcement had asked D. Burk to take a polygraph examination; (c) motion for a mistrial following Special Agent Steve Sprouse's testimony regarding an unindicted co-conspirator's past conviction for arson; (d) motion to suppress statements obtained from D. Burk at his home on the basis that they were obtained in violation of his Fifth Amendment rights; and (e) motion to sever his case from that of Walker. D. Burk further asserts that his

---

[8] While S. Burk was found guilty of multiple conspiratorial objects, we need not consider the evidence as to the objects of mail fraud and false declarations because "[a] guilty verdict in a multi-object conspiracy will be upheld if the evidence is sufficient to support a conviction of any of the alleged objects." *United States v. Ross*, 131 F.3d 970, 983 (11th Cir. 1998).

conviction violates the Due Process Clause of the Fifth Amendment because 18 U.S.C. § 1349 did not take effect until July 2002, while the charged conspiracy in this case began in 1996. We address each claim in turn.

a.  Denial of the Motion for Judgment of Acquittal

D. Burk argues that there was insufficient evidence presented at trial to sustain his conviction for conspiracy to commit mail fraud. To sustain a conviction for mail fraud, the Government must show that the defendant: (1) intentionally participated in a scheme or artifice to defraud another of money or property; and (2) used or caused the use of the mails or wires for the purpose of executing the scheme or artifice. *See United States v. Ward*, 486 F.3d 1212, 1222 (citing *United States v. Hewes*, 729 F.2d 1303, 1320 (11th Cir. 1984)). "Proof of specific intent to use the mails or wire service" is not required, only proof that the defendant "agreed to engage in a scheme to defraud in which [he] contemplated that the mails [or wire service] would likely be used." *United States v. Ross*, 131 F.3d 970, 981 (11th Cir. 1997) (citing *United States v. Massey*, 827 F.2d 995, 1002 (5th Cir. 1987)). In order to prove conspiracy under 18 U.S.C. § 1349, the Government must prove that: (a) a conspiracy existed; (b) the defendant knew of the conspiracy; and (c) the defendant knowingly and voluntarily joined it. *See U.S. v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015) (citing

7

*Vernon,* 723 F.3d 1234, 1273 (11th Cir. 2013)). "Because the crime of conspiracy is 'predominantly mental in composition,' the [G]overnment may prove these elements by circumstantial evidence." *Id.*

The record shows that there was sufficient evidence of D. Burk's knowledge of and involvement in the charged conspiracy. The Government proved that D. Burk purchased a fraudulent signature stamp that was used to cash an insurance check for a fire loss at one of the Walker-owned properties that was damaged by arson. D. Burk also falsely represented in an insurance application the value of a Walker-owned property which later was damaged by an arson. After the fire, he filed a false insurance claim for losses at the property even though he did not live there.

D. Burk claims that this conduct, while potentially unlawful in and of itself, did not connect him to the broader conspiracy and did not occur within the applicable statute of limitations. But the Government's evidence against D. Burk extended beyond this conduct and was sufficient to establish his knowledge of and participation in the single, unified conspiracy charged in the indictment. In particular, the 2007 search of D. Burk's residence turned up a number of documents showing D. Burk's connections to the broader conspiracy. These materials included: (a) the business card of Farrell Whiddon, a claims adjuster who handled S. Burk's 2002 fire loss claim; (b)

8

the business card of Richard Wallace, a claims adjuster who handled a 1997 fire-loss claim relating to a Walker property;[9] (c) repair estimates showing that D. Burk worked for Northside Home Remodeling, a company owned by Walker that submitted repair estimates to insurance companies for fire damage at certain of the Walker-owned properties; and (d) various other documents showing D. Burk's connections to unindicted co-conspirators and other Walker-owned properties and arsons. Viewing the evidence in the light most favorable to the Government, we conclude that a rational trier of fact could have found the essential elements of the charge were proven against D. Burk beyond a reasonable doubt. *See Mercer*, 541 F.3d at 1074.

As for D. Burk's contention that his conviction violated the statute of limitations, the District Court properly rejected this argument. *See United States v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003) (we review *de novo* the court's interpretation and application of the statute of limitations). Because his conspiracy conviction under § 1349 "does not require the commission of an overt act," *Gonzalez*, 834 F.3d at 1220, the Government simply needed to "allege[] and prove[] that the conspiracy continued into the limitations period." *Harrison*, 329 F.3d at 783. "A conspiracy is deemed to

---

[9] S. Burk was residing at such property when it experienced fires in both 2002 and 2006.

have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated." *Id.* The Government adequately alleged and proved that the conspiracy continued into the limitations period, whether it was ten or five years from the date of the indictment in 2012.[10] The evidence tended to show that Walker and his co-conspirators intended to continue to defraud insurance companies and financial institutions with no end in sight. Because D. Burk knowingly participated in this conspiracy, his continued participation is presumed. *See id.* And D. Burk failed to overcome this presumption by showing "that he affirmatively withdrew from the conspiracy or that the final act in furtherance of the conspiracy [ ] occurred." *See id.*

   b.  Motion for a Mistrial Based on Polygraph Testimony

   D. Burk argues that the District Court abused its discretion by denying his motion for mistrial based on Secret Service Agent Burruss' testimony on the fourth day of trial that he asked D. Burk whether he would be willing to submit to a polygraph examination. *See United States v. Melton,* 739 F.2d

---

[10] The limitations period for the crime of mail fraud affecting a financial institution is ten years. *See* 18 U.S.C. § 3293(2). For mail fraud not affecting a financial institution, the limitations period is five years. *See* 18 U.S.C. § 3282.

576, 579 (11th Cir.1984) ("The decision whether or not to grant a mistrial is within the sound discretion of the trial court.").

In describing an encounter at D. Burk's home regarding the fraudulent signature stamp,[11] Secret Service Agent Burruss testified that he asked D. Burk whether he would be willing to submit to a polygraph examination. D. Burk's counsel immediately objected, preventing Secret Service Agent Burruss from testifying to D. Burk's response. The District Court sustained D. Burk's objection. D. Burk then made a motion for a mistrial arguing that while the jury had not heard whether D. Burk had agreed to a polygraph examination, counsel's objection to such testimony suggested that D. Burk did not agree to law enforcement's request, which he insisted was highly prejudicial to D. Burk. The Court denied the motion and gave the jury the following curative instruction:

> [W]hen we began the case, and I gave you some preliminary instructions, one of the ones I told you, that you consider only the evidence in the case, and also that if the Court told you to disregard any particular matter, that you must disregard it and not consider it. There was a brief reference to a lie detector test exam. There is no evidence in this case regarding that. You should disregard that entirely as to making your decision about this case. It's to be disregarded, it's not in the evidence, and it may not be relied upon by you for any purpose whatsoever.

---

[11] *See* Section III.a *supra*.

11

"The decision of whether to grant a mistrial lies within the sound discretion of a trial judge as he or she is in the best position to evaluate the prejudicial effect of improper testimony." *See U.S. v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994) (internal quotation omitted) (citing *United States v. Holmes*, 767 F.2d 820, 823 (11th Cir. 1985)). Given Secret Service Agent Burruss was prevented from testifying to D. Burk's response, the record supports the District Court's assessment that the effect of this testimony was unclear.  While the comments may have carried some minimal prejudice, the effect of the testimony was far from "devastating," as D. Burk claims.

Furthermore, when a court gives a curative instruction regarding improper testimony, as the District Court did in this case, "it supports the court's decision not to grant a mistrial by decreasing the possibility of undue prejudice." *Id.* at 1411. Additionally, "[w]here the district court gives a curative instruction, the district court's refusal to declare a mistrial will not be overturned unless the evidence is so highly prejudicial as to be incurable."  *United States v. Dodd*, 111 F.3d 867, 870 (11th Cir. 1997) (internal citation omitted). Here, Secret Service Agent Burruss' truncated comment, in the context of the trial as a whole, was not so prejudicial as to be incurable by the court's instruction. Accordingly, we find that the District Court did not abuse its discretion in denying D. Burk's motion for a mistrial.

12

c. <u>Unindicted Co-Conspirator Testimony</u>

D. Burk argues that the District Court abused its discretion by denying his motion for a mistrial based on Special Agent Sprouse's testimony on the ninth day of trial that Benjamin Norwood, an unindicted co-conspirator who allegedly directed D. Burk to purchase the fraudulent signature stamp,[12] "had a property fire" that was "the result of an arson, and [Norwood] was subsequently convicted of that." D. Burk's counsel objected to Special Agent Sprouse's testimony on relevance grounds. The Court sustained the objection and directed the jury to "disregard any reference to other convictions of persons not on trial." Following such instruction, D. Burk renewed his motion for a mistrial, arguing that the earlier polygraph testimony[13] was "magnified" by the testimony regarding Norwood. D. Burk further argued that the Government was trying to link his client to Norwood and that he had no idea to what arson the witness was referring. The District Court denied D. Burk's motion and issued the following additional curative instruction to the jury:

> Ladies and gentleman, as I have told you earlier in the case that from time to time the Court will instruct you as it has from time to time that certain matters may not be considered and are not evidence in the case, and you must follow that instruction. The reference to someone

---

[12] *See* Section III.a *supra.*

[13] *See* Section III.b *supra.*

13

named Norwood having committed arson and having been convicted, you should disregard. There is no evidence and no matter or person before you on those charges at all, and those are matters that you may not consider at all. You must disregard them.

The District Court did not abuse its discretion in denying D. Burk's mistrial motion. The Court reasonably concluded that Secret Service Agent Burruss' testimony regarding the polygraph did not so compound the error from Special Agent Sprouse's testimony, five days later, regarding Norwood, that a mistrial was necessary. Moreover, the Court promptly gave a specific curative instruction, and we presume that juries follow their instructions. *United States v. Roy*, 855 F.3d 1133, 1186–88 (11th Cir. 2017) (*en banc*). For both of these reasons, the likelihood that the Norwood testimony had a substantial impact on the jury's verdict is minimal. *See Perez*, 30 F.3d at 1411. We therefore find that the District Court did not abuse its discretion in denying D. Burk's second motion for a mistrial.

d.  <u>Suppression of D. Burk's Statements to Agent Van Ellison</u>

D. Burk contends that the statements he made during the execution of a search warrant on his home should have been suppressed because they were the product of a custodial interrogation obtained in violation of his Fifth Amendment rights. A district court's ruling on a motion to suppress presents a mixed question of law and fact. *United States v. Santa,* 236 F.3d 662, 668 (11th Cir. 2000). "We are required to accept the district court's

14

factual findings as true, unless those findings are shown to be clearly erroneous." *Id.* The district court's application of the law to the facts, however, is reviewed *de novo. Id.*

A suspect who is in custody is entitled to *Miranda* warnings before being interrogated. *United States v. Lall*, 607 F.3d 1277, 1284 (11th Cir. 2010). To determine whether a suspect is in custody, "we look to whether he was physically deprived of his freedom in any significant way or if a reasonable person in the defendant's position would have understood that his freedom was so restrained." *Id.* "[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004)). We examine whether a suspect was in custody under the totality of the circumstances. *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010).

The evidence elicited at the pretrial suppression hearing (the "Suppression Hearing") was consistent with the District Court's finding that D. Burk was not subject to custodial interrogation when responding to Agent Van Ellison's questioning.[14] According to the evidence, Agent Van Ellison

---

[14] It is worth noting that D. Burk did not testify at the suppression hearing and did not call any witnesses on his behalf.

15

and four other law enforcement officers went to D. Burk's residence at around seven o'clock in the morning to execute a search warrant. After the officers knocked and announced their presence, D. Burk's daughter came to the door, said her father was sleeping and went to get him. D. Burk then came to the door and admitted three of the officers. The officers provided him with a copy of the search warrant and explained why they were there. They also asked him to take a seat in his living room. While seated in the living room, Agent Van Ellison asked D. Burk several questions from a prepared questionnaire regarding D. Burk's connections to various persons and businesses involved in the conspiracy. One other officer was present in the room at the time. Agent Van Ellison recorded D. Burk's answers, which the Government used against him at trial. During the encounter, the officers did not draw their weapons, D. Burk was not handcuffed and the officers did not use abusive or threatening language. D. Burk also did not ask to speak with an attorney.

D. Burk asserts that having multiple armed police officers enter and search his home and exercise dominion and control over his belongings is tantamount to being in custody. D. Burk cites *Orozco v. Texas*, 394 U.S. 324 (1969) for this proposition. However, *Orozco* is completely distinguishable from the instant matter. In that case, four officers entered the defendant's

16

boarding house room at four o'clock in the morning while he was asleep. From the moment they entered his room, the officers began questioning the defendant. According to the officers' testimony, the defendant was not free to leave and was under arrest. That is not the case here. The officers did not testify that D. Burk was under arrest or that he was not free to cease answering questions. The officers did not storm into D. Burk's bedroom while he was asleep, but instead waited for him to wake up and meet them outside of his home before initiating their search. Furthermore, the officers did not confine D. Burk to a small room during their questioning or physically restrain him in any way. Rather, the questioning occurred on the familiar ground of D. Burk's living room and while he was unrestrained. *See Luna-Encinas*, 603 F.3d at 882 ("[W]e are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home." (quotation marks omitted)).

These facts also distinguish this case from two other cases cited by D. Burk, both of which involved a "police-dominated" atmosphere and physical separation or restraint of the defendant. D. Burk cites *United States v. Cavasoz*, 668 F.3d 190 (5th Cir. 2012), but that case involved a dozen officers and a defendant who was handcuffed and questioned in a small

17

room with the door closed. Similarly, *United States v. Craigshead*, 539 F.3d 1073 (9th Cir. 2008), also cited by D. Burk, involved a defendant who was interrogated by eight officers in the storage room of his house with the door shut. *Cavasoz* and *Craigshead* are, therefore, inapposite.[15] Accordingly, we find that the District Court made no clear error in its findings of fact regarding the admissibility of the subject statements, and upon *de novo* review, correctly applied the law to those facts.

e. Motion to Sever

D. Burk argues that the District Court erred by denying his motion to sever his trial from that of Walker. Joinder of defendants is proper "if they are alleged to have participated in the same . . . series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). "If the jury cannot keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to each, severance should be granted." *United States v. Carrazana*, 921 F.2d 1557, 1567 (11th Cir. 1991). We have held:

> In conspiracy cases like this one, the general principle is well-settled that "persons who are charged together should also be tried together." In evaluating a motion for severance, this court must determine whether the prejudice inherent in a joint trial outweighs the interests in judicial

---

[15] Furthermore, both cases are not binding on this Court as they were decided outside of our Circuit.

economy. To establish that the district court's balancing of interests was an abuse of discretion, [the defendant] must "demonstrate that a joint trial resulted in specific and compelling prejudice to the conduct of his defense." "Compelling prejudice" is demonstrated by a showing that the jury was unable to make an individualized determination as to each defendant.

*United States v. Adams*, 1 F.3d 1566, 1578 (11th Cir. 1993) (quoting *United States v. Saget*, 991 F.2d 702, 707 (11th Cir. 1993)). "This is a heavy burden, and one which mere conclusory allegations cannot carry." *United States v. Hogan*, 986 F.2d 1364, 1375 (11th Cir. 1993). Furthermore, "cautionary instructions to the jury to consider the evidence as to each defendant separately are presumed to guard adequately against prejudice." *United States v. Gonzalez*, 940 F.2d 1413, 1428 (11th Cir. 1991). *See also United States v. Smith*, 918 F.2d 1501, 1509–10 (11th Cir. 1990) (the possible prejudicial effects of the disparity of evidence "can be significantly alleviated if the trial judge is careful to instruct the jury that it must consider the evidence against each defendant on a separate and independent basis.").

D. Burk has not identified any specific prejudice he suffered as a result of the joint trial. D. Burk simply argues that the jury's verdict that he participated in the overall conspiracy based solely on a finding that he conspired to commit mail fraud establishes that he was prejudiced by being

19

tried jointly with Walker.[16] But, to the contrary, the jury's verdict indicates that the evidence presented against Walker did not prejudice D. Burk as the jury found Walker guilty of every object of the overall conspiracy, but only found D. Burk guilty of conspiracy to commit mail fraud. Furthermore, the District Court instructed the jury that it "must consider the case of each Defendant separately and individually" and that if they found "one Defendant guilty or not guilty of the crime charged, that must not affect [their] verdict for the other Defendants." The jury's verdict indicates that it followed the District Court's instruction to consider the evidence against each Defendant on a separate and independent basis. We therefore conclude that the District Court did not abuse its discretion in denying D. Burk's severance motion.

f. Due Process Violation

D. Burk contends that his conviction violates the Due Process Clause of the Fifth Amendment because 18 U.S.C. § 1349 did not become effective until July 2002, six years after the charged conspiracy began. Analogizing the alleged violation to a violation of the Ex Post Facto Clause, D. Burk contends that the District Court violated his due process rights by

---

[16] D. Burk also asserts that the Government did not prove that he was a member of a single overall conspiracy from which he never withdrew. In light of our discussion in Section III.a *supra*, D. Burk's second argument is unavailing.

adjudicating him guilty and sentencing him under § 1349 when the evidence failed to show that he committed overt acts in furtherance of the conspiracy after that date.

D. Burk raises this argument for the first time on appeal. At the District Court level, D. Burk only asserted a violation of the statute of limitations,[17] not the Due Process Clause.[18] Ordinarily, a defendant's claim that his sentence was imposed in violation of the Ex Post Facto Clause or another constitutional guarantee is reviewed *de novo*. *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000). However, where a defendant fails to raise the error in the District Court, the review is for plain error. *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013). D. Burk's argument fails under either standard.

Looking to the case law within our Circuit, we conclude that when a statute takes effect during an ongoing conspiracy and criminalizes the

---

[17] We reject D. Burk's statute of limitations argument for the reasons explained in Section III.a *supra*.

[18] The District Court specifically addressed the omission of this issue in its Order denying D. Burk's motion for judgment of acquittal:

> The Court also notes that one of the conspiracy statutes charged, 18 U.S.C. § 1349, was not enacted until 2002, six years after the Count One conspiracy was alleged to have begun. No Party has taken up the issue of retroactivity at any point during this case, and the Court does not herein address it because the Court . . . finds sufficient evidence to support a finding that a § 1349 conspiracy to commit mail fraud, as to Shirley Burk and Darryl Burk, and mail, wire, and bank fraud, as to Elbert Walker, existed after the enactment of § 1349.

21

conduct of the conspiracy, the new statute applies if the conspiracy continues beyond the new statute's effective date, even if no overt act by the defendant is shown to have occurred thereafter.[19] *See Futrell*, 209 F.3d at 1289. In *Futrell*, we held that the Mandatory Restitution to Victims Act, 18 U.S.C. § 3663A (the "MVRA"),[20] applied to criminal conduct which began prior to the MVRA's effective date but continued after the MVRA went into effect:

> [If] the MRVA takes effect during an ongoing conspiracy, then the MVRA subjects the conspiratorial acts occurring before the statutory change to the new provision . . . The ongoing nature of the conspiracy enables application of the new statute without violating the Ex Post Facto Clause.

*Futrell*, 209 F.3d at 1289–90.

Similarly, in *United States v. Nixon*, 918 F.2d 895 (11th Cir. 1990), we applied the United States Sentencing Guidelines to a conspiracy conviction where the conspiracy commenced before the guidelines were promulgated but continued after their adoption. While we acknowledged in *Nixon* that a conspirator may be able to escape the effect of a later provision

---

[19] The charged conspiracy in the instant matter began in 1996, six years before § 1349's enactment. Prior to 2002, conspiracy to commit fraud offenses was charged under 18 U.S.C. § 371, which required evidence of an overt act in order to convict. *United States v. Rogers*, 769 F.3d 372, 380 (6th Cir. 2014). In 2002, Congress enacted § 1349, which created a separate conspiracy provision for fraud offenses, raised the maximum penalty for conspiracy to commit fraud offenses from five to ten years, and eliminated the overt-act requirement. *Id.* at 380–81. Thus, after 2002, the Government was not required to prove that D. Burk committed an overt act in furtherance of the charged conspiracy in order to convict him of a violation of § 1349.

[20] The MVRA went into effect on April 24, 1996.

22

if he shows he withdrew from the conspiracy before such provision went into effect, *id.* at 906, that's not the case in the instant matter. We further held in *Nixon* that the Government did not need to prove that the defendant committed any act in furtherance of the conspiracy after the enactment of the new provision or that the defendant knew that his co-conspirators had acted after the deadline. *Id.* at 907.

Accordingly, in the instant matter, the Government did not have to prove that D. Burk committed an overt act in furtherance of the charged conspiracy after 2002, only that the conspiracy continued beyond § 1349's effective date. Given that the Government proved that D. Burk knowingly participated in a conspiracy that lasted well after § 1349's enactment in 2002, the District Court's application of § 1349 to D. Burk did not violate due process. Therefore, the District Court did not commit plain error by entering judgment against and imposing sentence on D. Burk.

**AFFIRMED.**

23