[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12484
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cr-00526-VMC-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARQUESE JERRODDA ALLEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 21, 2021)

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Marquese Allen appeals his conviction for possessing a firearm and ammunition as a convicted felon. He argues that the district court erred by denying his motion to suppress the gun and ammunition found during a search of a motel room because he had a reasonable expectation of privacy and the maid who found the gun acted as an agent for the police. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In July 2018, a woman staying at a motel in St. Petersburg, Florida called the police to report that a man had "pointed a gun at her." Three officers, including Officer Corinna Branley, responded to the call. When the officers arrived, they saw a man, Allen, in the parking lot who matched the description provided by the victim. The officers approached Allen and told him to get "on the ground so [they] could perform a quick pat-down." Allen did not have a gun on him.

While the other two officers remained with Allen, Officer Branley went to talk to the victim. The victim confirmed that Allen was the man who had pointed a gun at her. She explained that she and her boyfriend were renting a room at the motel and Allen was their neighbor. Her boyfriend asked her to tell Allen that "[h]e was out of town caring for some sick family members." When she told Allen, he became "really upset, walked over to [his] nightstand, pulled out a silver and black handgun, . . . pointed the handgun" at her, and said, "well, someone is going to pay me my money." The victim then left the room, went to her car, and called the police.

2

After speaking with the victim, Officer Branley went to talk to Allen. At this point, Allen had been arrested by the other two officers for possessing drugs. Officer Branley read Allen his Miranda[1] rights and asked him if he wanted to give a statement about the alleged assault with the gun. He declined.

The motel manager called the owner, Manji Jethwa, and told him what was going on. Mr. Jethwa told the manager to evict Allen and "clean the room and let him go." When Mr. Jethwa arrived, he was "upset[,] angry[,] and perturbed," and told a maid to remove Allen's belongings from the room because "he wanted [Allen] out." The maid "seemed afraid, a little fearful," and "nervous" "because she knew there was a gun involved." "As [the maid] was going to the room to clear out [Allen's] belongings," Officer Branley offered to "stand by in the room with [the maid] for safety reasons" and the maid responded, "I would like you to stand in the room."

The maid went into the room and, as requested, Officer Branley followed. Officer Branley told the maid that if she found a gun she should not touch it because Officer Branley "didn't want [the maid] to harm herself or manipulate the gun and have it discharge." As she was cleaning, the maid told Officer Branley that she "found the gun" in a "travel size, black bag." Officer Branley told the maid not to touch the gun and called for a crime scene technician to process the gun.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3

A grand jury indicted Allen for possessing the firearm and ammunition found in the motel room, knowing that he had been previously convicted of multiple felonies, in violation of 18 U.S.C. sections 922(g)(1) and 924(e). Allen moved to suppress the firearm and ammunition, arguing that he had a reasonable expectation of privacy in the motel room because he was not lawfully evicted, there were no exigent circumstances to justify the warrantless search, the seizure of the gun was unlawful because "Officer Branley was not lawfully in a place where she would have been able to view it," and the motel maid acted as a government agent when she searched his bag and found his gun. The government responded that Allen lacked standing to challenge Officer Branley's presence in the motel room because he had been evicted, and, even if he had standing, the search did not violate his Fourth Amendment rights because it was conducted by the maid at the direction of the motel owner and the gun and ammunition would have inevitably been found when the maid cleared out the motel room.

The magistrate judge held an evidentiary hearing, at which the owner of the motel and Officer Branley testified. In his report and recommendation, the magistrate judge "fully credit[ed] the testimony of Officer Branley" because "[h]er testimony was unequivocal and forthright" and "[t]here was nothing about Officer Branley's demeanor or responses that suggested deception." The magistrate judge recommended denying Allen's motion because Allen did not have a reasonable

expectation of privacy in the motel room after he had been evicted and, therefore, he lacked standing to challenge Officer Branley's presence in the motel room. The magistrate judge also found that the search of Allen's bag did not violate the Fourth Amendment because it was conducted by the motel maid and she was not acting as a government agent. The district court adopted the report and recommendation and denied Allen's motion.

After a bench trial, the district court found Allen guilty and sentenced him to two-hundred months' imprisonment, to be followed by five years of supervised release. Allen appeals the district court's order denying his suppression motion.

## STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review factual findings for clear error and the application of facts to the law de novo. United States v. Thomas, 818 F.3d 1230, 1239 (11th Cir. 2016). When considering a ruling on a suppression motion, we construe all facts in the light most favorable to the prevailing party below. Id. We afford substantial deference to the district court's credibility determinations. United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." United States v. Cruickshank, 837 F.3d 1182, 1192 (11th Cir. 2016) (quotation marks omitted).

5

## DISCUSSION

Allen contends that the district court erred by denying the motion to suppress his gun and ammunition because:  (1) he had standing to challenge the search of the motel room; and (2) even if he lacked standing to challenge the search of the room, he still had standing to challenge the search of his bag, and that warrantless search was unlawful because the maid acted as the government's agent.  We address each argument in turn.

*Standing to Challenge the Search of the Motel Room*

First, Allen lacks standing to challenge Officer Branley's presence in the motel room.  "[A]n individual's Fourth Amendment rights are not infringed—or even implicated—by a search of a thing or place in which he has no reasonable expectation of privacy."  United States v. Ross, 964 F.3d 1034, 1041 (11th Cir. 2020).  "This issue—whether an individual has a reasonable expectation of privacy in the object of the challenged search—has come to be known as Fourth Amendment 'standing.'"  Id.  Ordinarily, "[u]se of a motel room for lodging provides the same expectation of privacy as does a home." United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994).  But when control of the room shifts back to the motel's management—for example, when a motel guest's rental period ends—the guest no longer has a reasonable expectation of privacy in the motel room.  See Ross, 964 F.3d at 1043–44 ("a hotel guest loses his reasonable expectation of privacy in his

6

room following checkout time"); cf. United States v. Mercer, 541 F.3d 1070, 1075 (11th Cir. 2008) (motel management would have authority to consent to search after defendant's rental agreement terminated and control "reverted back to motel management").

In Ross, officers searched the defendant's motel room with the consent of the motel's management and found drugs. 964 F.3d at 1041–42. We held that the defendant lacked standing to challenge the search because it was conducted after the motel's checkout time. Id. at 1043–44. We explained that "a short-term [motel] guest . . . has no reasonable expectation of privacy in his room after checkout time, and thus no standing to object to a room search that police conduct with the consent of [motel] management after checkout time has passed." Id. at 1043. That is because "[i]t's about control" and, "[a]t checkout time, everything changes." Id. "[A]fter checkout time, even if a guest has not completely vacated his room, the motel manager has the right to enter and examine the room as if it had been relinquished, because the guest no longer has sufficient control over the premises to establish a right to privacy therein." Id. (cleaned up).

Similarly, in Mercer, a motel security guard found drugs in the defendant's motel room after he was arrested for unrelated conduct. 541 F.3d at 1072–73. The motel manager turned the drugs over to the police and asked the officers "to search the [defendant's] room thoroughly because she feared there might be more meth,

7

guns, or dangerous chemicals in the room." Id. The officers searched the room and found more drugs and a gun, which the defendant later moved to suppress. Id. at 1073. The district court denied the motion, concluding that "the officer had an objectively reasonable good-faith belief that he obtained valid consent to search the room." Id. On appeal, the defendant argued that "no reasonable officer could have believed that control of the room reverted from [himself], a registered guest, back to motel management." Id. at 1074. We rejected that argument because the officer reasonably believed that "the motel had terminated [d]efendant's rental agreement and that control of the room had, in fact, reverted back to motel management," at which point the manager would have "had authority to consent to the search." Id. at 1075.

Here, Allen had no reasonable expectation of privacy in the motel room because he had no control over the room after he was evicted. When Allen rented his room, he agreed to the motel's "Conditions of Room Rental," which allowed the owner to immediately evict a guest if he or she committed "[a]ny criminal conduct." The conditions were visible in the lobby when Allen signed his registration card and were placed on the door of his motel room. Florida law permits motel staff to enforce those conditions, see Fla. Stat. 509.101(1) (2015), and, when the motel owner learned that Allen pointed a gun at another guest, he immediately evicted Allen and had his staff remove Allen's belongings from the room. At that point, like in Ross,

8

any reasonable expectation of privacy Allen had in the motel room was terminated because control of the room shifted from Allen back to the motel owner.  See Ross, 964 F.3d at 1043–44; cf. Mercer, 541 F.3d at 1075; see also United States v. Molsbarger, 551 F.3d 809, 812 (8th Cir. 2009) (holding that defendant had no reasonable expectation of privacy after "the hotel manager, properly exercising his authority, decided to evict the unruly guests"); United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997) ("Once a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession." (quotation marks omitted)).  Therefore, Allen lacks standing to challenge Officer Branley's presence in the motel room.

*The Maid's Search of Allen's Bag*

Allen also argues that even if he did not have a reasonable expectation of privacy in the motel room after he was evicted, he still had a reasonable expectation of privacy in his bag.  The maid's warrantless search of his bag, Allen argues, violated his Fourth Amendment rights because she was acting on behalf of Officer Branley.

The Fourth Amendment only curtails governmental action, and thus, "[a] search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government."  United States v. Steiger, 318 F.3d

9

1039, 1045 (11th Cir. 2003).  To determine whether a private person was acting as the government's agent, district courts "look to two critical factors:  (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends."  Id.  As part of the inquiry, district courts may also consider whether the government "openly encouraged or cooperated in the search."  United States v. Ford, 765 F.2d 1088, 1090 (11th Cir. 1985).  We review for clear error the district court's factual finding that a private person was not acting as the government's agent.  See id.

The evidence showed that the maid's "purpose," as directed by the motel owner, was to clear out the motel room after Allen was evicted, not to assist law enforcement in a search for the gun.  As soon as the motel owner learned that Allen had pointed a gun at another guest, the owner decided to evict Allen and told the manager to "clean the room and let him go."  When he arrived at the scene, the motel owner, not Officer Branley, told the maid to clear Allen's belongings from the room because Allen had been evicted.  And there was no evidence that Officer Branley openly encouraged or cooperated in the maid's "search."  Officer Branley did not tell the maid to enter the room or to conduct the search, and only accompanied the maid because the maid said it would make her feel safer.

Allen argues that Officer Branley encouraged the maid to search for the gun because Officer Branley warned the maid not to touch the gun if she found it. But Officer Branley warned the nervous maid not to touch the gun only after Allen was arrested and the owner directed the maid to clean out the motel room. This was not encouragement to search for the gun—the maid, at the direction of the motel owner, was already on her way to clean out the room and was clearly nervous about the potential presence of a gun because of what happened earlier. The maid's "search" of Allen's room was well underway by the time Officer Branley warned her about the potential danger of touching a loaded gun. Nothing Officer Branley said encouraged the maid to do what she was already doing, and was clearly directed to do by the motel owner—cleaning out the room. The district court did not clearly err by finding that the maid was not acting as the government's agent when she found the gun. See United States v. Simpson, 904 F.2d 607, 609–10 (11th Cir. 1990) (concluding FedEx employees did not act as the government's agents because "[n]o [g]overnment agent instructed the [FedEx] employees to open and inspect the box" and "the sole purpose" of the search was to "determin[e] where to deliver the parcel"); Ford, 765 F.2d at 1090 (concluding private person did not act as the government's agent where there was no evidence that the government "openly encouraged or cooperated in the private citizen's search"); see also United States v. Smythe, 84 F.3d 1240, 1243 (10th Cir. 1996) ("It is clear that if a government agent

11

is involved 'merely as a witness,' the requisite government action implicating Fourth Amendment concerns is absent.").[2]

**AFFIRMED.**

---

[2] Allen also argues that there were no exigent circumstances that prevented Officer Branley from obtaining a warrant to search the motel room. Because we conclude that the district court did not err by finding that Allen did not have standing to challenge Officer Branley's presence in the motel room and the maid was not acting on behalf of Officer Branley, we don't have to reach the exigent-circumstances issue.